UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action No. 6:19-CR-031-CHB-HAI-6 |
| v. | ) | |
| | ) | |
| TIMOTHY MARROQUIN, | ) | |
| | ) | **ORDER ADOPTING RECOMMENDED DISPOSITION** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Magistrate Judge Hanly Ingram's Recommended Disposition and Order [R. 172] denying Defendant Timothy Marroquin's Motion to Suppress [R. 77], Motion to Strike Surresponse to Defendants' Replies [R. 101], and Motion for Disclosure of Government Evidence [R. 92].[1] Defendant Marroquin filed Exceptions to the Recommended Disposition [R. 176] and the United States filed a Response in Opposition to Defendant's Objections and Exceptions [R. 183]. For the reasons described below, the Court will adopt the Magistrate Judge's Recommended Disposition and Order and overrule Defendant's Exceptions.

I.   **Background Facts**

On June 27, 2019, Defendant Timothy Marroquin was indicted as part of a multidefendant drug trafficking conspiracy, in violation of 21 U.S.C. § 846. [R. 1-1] In order to

---

[1] The Recommended Disposition and Order [R. 172] recommended a disposition on Defendant's Motion to Suppress [R. 77] and entered orders on the Motion to Strike [R. 101] and Motion for Disclosure [R. 92]. Accordingly, this Order disposes of Defendant's Motion to Suppress only, since Defendant's other Motions have already been disposed of.

- 1 -

convict Marroquin, the United States has presented several forms of evidence it hopes to use at

trial.  That evidence will be described in turn, below.

      **a.  Search of Marroquin's Facebook**

The first piece of evidence at issue is communications from Marroquin's Facebook

account.  During the investigation, and after a controlled purchase of methamphetamine, the

Kentucky State Police (KSP) discovered that Marroquin was using Facebook Messenger to

coordinate drug transactions. [R. 77-2, p. 2.]  KSP applied for a search warrant on March 18,

2019 from the Bell District Court to search Marroquin's Facebook account, messages, wall posts,

photos, and login information. [*Id.*, p. 1]  The factual portion of the affidavit supporting the

search warrant application stated, in full:

> Affiant has been an officer in [KSP] for a period of 16 years and the
> information and observations contained herein were received and made in his/her
> capacity as an officer thereof.
>
> On Tuesday March 12th 2019, an undercover drug transaction was
> conducted using a confidential informant, which purchased approximately 57
> grams of suspected crystal meth from a male subject by the name of Timothy
> Marroquin for the purchase price of $1100.00. It was discovered prior to the
> illegal drug transaction that the suspect has used and continues to use Facebook
> messenger as a form of communication to arrange these types of drug
> transactions.
>
> Through an ongoing drug investigation, a suspect by the name of Rebecca
> Lannan, aka, Becky Littles has been identified as a conspirator involved in this
> investigation. Through information gathered during this investigation by
> surveillance of said subjects, prior Facebooks search warrants, and information
> gathered by a qualified confidential informant, Rebecca Lannan and Timothy
> Marroquin are conspiring to traffic in crystal meth. The two are believed to be
> using Facebook messenger as a means to communicate to one another when
> arranging drug deals, and further their illegal drug trafficking business.

[*Id.*]  The Court granted the search warrant that same day. [R. 77-3]  It was executed on April 1,

2019. [*Id.*]

Defendant Marroquin moved to suppress evidence derived from this search warrant. [R. 77]  Marroquin's codefendant, Rebecca Lannan, also filed a Motion to Suppress for evidence gathered under a search warrant for her own Facebook account. [R. 74][2]  In its Response to Marroquin and Lannan's Motions to Suppress [R. 82], the government advised that it would not use information gathered from either Facebook search warrant as direct evidence at trial. [R. 82]  But it maintained that it may "use Facebook materials pertaining to either Defendant derived from other sources (i.e., cooperators' Facebook Messenger accounts accessed by and through the consent of those persons)." [*Id.*]  Consequently, it asked that Marroquin's (and Lannan's) Motion to Suppress be denied as moot. [*Id.*]  Defendants still asked, however, that their Motions to Suppress be granted, alleging that the warrants at issue led to further searches that should be suppressed as "fruit of the poisonous tree." [R. 83]

### b.  Search of the Lannan Residence

On May 15, 2019, after the search of Marroquin's Facebook account, KSP applied in Bell District Court for a search warrant of Lannan's residence, using information gleaned from the Facebook searches in the affidavit. [R. 95-1]  The factual portion of the affidavit stated, in full:

> On May 8, 2019 I conducted a controlled undercover drug transaction utilizing a Kentucky State Police confidential informant which purchased approximately 3oz of suspected crystal methamphetamine from Timothy Marroquin inside above described residence in Pineville KY 40977 for the purchase price of $1800.00 (Kentucky State Police buy money)[.] During the transaction surveillance was maintained by detectives. Reference case # 10-19-0207[.]

> Acting on the information received, Affiant conducted the following independent investigation:

> Through surveillance of the residence and qualified confidential informant statements that have notified detectives that Becky Little and Timothy Marroquin

---

[2] Lannan eventually withdrew her pending Motions [R. 136] and moved for rearraignment. [R. 139]

hold large amounts of crystal methamphetamines and large amounts of U.S. currency. **Through social media conversations it has been revealed that the residence is used to store and traffic narcotics throughout the surrounding area.**

Through training, experience **and knowledge** it is believed that Becky Littles, and Timothy Marroquin store large amounts of narcotics and money at this residence.

[R. 95-1, p. 4 (emphasis added)]  The search warrant was approved that same day and executed on May 17, 2019. [*Id.*, pp. 1–2]  Defendant Marroquin argues that the information gleaned from the Facebook searches—the language in bold above—must be struck from the affidavit as "fruit of the poisonous tree." [R. 157, p. 4]  As a result, Marroquin argues that the search itself must be suppressed because, if the challenged information is struck, the warrant for Lannan's residence is not supported by probable cause. [*Id.*]

### c.   Interviews of Witnesses X and Z

As part of a separate investigation, the federal Drug Enforcement Agency (DEA) got involved to pursue the suppliers of this drug conspiracy. [R. 122, Evidentiary Hearing, Recording at 01:01:42–01:03:33].  The DEA interviewed Witnesses X and Z, who are known to Defense counsel (X being a codefendant), on January 14, 2020 and late February, 2020, respectively. [R. 157, p. 5]  DEA Agent Ian Dalrymple, who interviewed the witnesses, reviewed the information from the Marroquin Facebook search in 2019, before the 2020 interviews. [*Id.*]  Both interviews contain references to Marroquin. [DEA-6][3]  Defendant moved to suppress information from these interviews as "fruit of the poisonous tree," arguing it was derived from the challenged Facebook search warrant. [R. 157, p. 6]  The government, however, maintained it discovered these witnesses through independent sources. [R. 156, p. 2]

---

[3] The DEA-6 reports for Witnesses X and Z are not in the record of this case.

Magistrate Judge Ingram held an evidentiary hearing on the Motion to Suppress on May 7, 2020.  Agent Dalrymple was questioned about how the witnesses were discovered and questioned, and he maintained that he did not rely on the Facebook search materials at all. [R. 122, Recording, 01:06:22–01:07:25]  But he was not able to say much about how he came to know information about Marroquin: he could not say when he first learned of Marroquin, nor could he say how Marroquin's name came up in the interviews. [*Id.* at 00:50:39–00:50:54; 01:23:27–01:25:44]  Agent Dalrymple identified sources other than the Facebook search that led to his interest in Marroquin, but he could not identify the specific way by which he found out about Marroquin. [*Id.* at 01:27:02–01:28:26.]

## II.     Recommended Disposition

In Marroquin's Motion to Suppress [R. 77], he alleged that the information gleaned from the search of his Facebook account must be excluded because the search warrant lacked probable cause and did not qualify for an exception to the "Exclusionary Rule." [R. 77-1., pp. 6–10][4]  The government filed a Response, advising the Court that it would not use information from the Facebook search in its case-in-chief. [R. 82]  Defendant filed a Reply [R. 83], questioning what other evidence the government may seek to admit.  The United States filed a Response [R. 95], maintaining that other information to be introduced was not derivative of the Facebook search. [R. 95, p. 2]  Defendant filed a Reply [R. 97], which identified the search of Lannan's residence as a derivative search that should be suppressed for lacking probable cause. [*Id.*, pp. 4–9]  Defendant also argued at the April 22, 2020 telephone conference that information from Witnesses X and Z should be suppressed as derivative from the Facebook search. [R. 115]

---

[4] Defendant had also argued that the warrant to search Marroquin's Facebook account was overbroad, but he never pursued this argument and Judge Ingram treated it as abandoned. [R. 77, pp. 10–11; R. 172, p. 1 n.1]

On July 10, 2020, Magistrate Judge Ingram filed a Recommended Disposition and Order [R. 172], which denied the Motion to Suppress on all fronts. The Recommended Disposition made the following recommendations:

*Search of Marroquin's Facebook*: First, Judge Ingram recommended that the search warrant lacked probable cause, since the affidavit supporting it did not provide an adequate nexus between the supporting information (the controlled purchase from Marroquin) and the object of the search (his Facebook account). [R. 172, pp. 8–10]  Specifically, the affidavit failed to articulate how KSP discovered that Marroquin was using Facebook Messenger for drug deals or why it believed as much, nor did it identify the account to be searched as Marroquin's account. [*Id.*, pp. 8–9]  Instead, it only provided a basis for showing Marroquin was dealing drugs and a crime was committed on the account to be searched. [*Id.*, p. 8]  Even with probable cause lacking, though, the evidence was still admissible under the "Good-Faith Exception" to the exclusionary rule, since the police officer's reliance on the warrant was objectively reasonable and there was no evidence that the officer misled the issuing magistrate. [*Id.*, pp. 10–13]  The "Bare-Bones Exception" to the good-faith exception did not apply because the affidavit was not so completely "lacking in indicia of reliability" that a reasonable police officer would have known it was invalid. [*Id.*, pp. 11–13 (quoting *United States v. Propps*, No. 4:18-CR-03, 2019 WL 668465, at *3 (N.D. Ga. Feb. 19, 2019))]  Instead, the affidavit provided some information, from the information about the identity of the affiant, to the controlled buy, to the admittedly vague information about using Facebook Messenger. [*Id.*, p. 11]

*Search of Lannan Residence*: Judge Ingram next held that information from the search of the Lannan residence should not be suppressed, for two reasons.  First, under Sixth Circuit case law, when a search warrant falls under the good-faith exception, the fruits of that search warrant

should not be suppressed—even if the original search warrant lacks probable cause. [*Id.*, pp. 13–14]  Since the original search warrant fit within the good-faith exception, the search of the Lannan residence is untainted. [*Id.*]  Second, even if the Facebook search did taint the residence search, other evidence supported probable cause, even excluding the Facebook search. [*Id.*, pp. 14–17]  Specifically, the affidavit contained information about a controlled buy from a confidential informant, which by itself provided enough evidence to establish probable cause. [*Id.*, p. 16]  The other information in the affidavit—vague averments of surveillance and statements from confidential informants—strengthened the establishment of probable cause, even if their evidentiary value was fairly low. [*Id.*, pp. 16–17]  Further, Judge Ingram recommended that even if probable cause could not be established, the warrant for the residence search would fit under the good-faith exception, since it was not bare-bones. [*Id.*, p. 17]

*Interviews of Witnesses X and Z*: Judge Ingram also maintained that the interviews of Witnesses X and Z were also untainted because the Facebook search fit the good-faith exception to the exclusionary rule. [*Id.*, pp. 13–14]  Assuming the Facebook search tainted the interviews, as Defendant argued, Judge Ingram concluded that the government failed to show that the interviews were developed via an independent source. [*Id.*, pp. 21–22]  Because Agent Dalrymple could not provide any specific information at the evidentiary hearing about when he saw the information from the Facebook search or how Marroquin's name came up in the interviews of Witnesses X and Z, the government could not meet the burden of showing independent-source discovery. [*Id.*, pp. 20–22]  Still, the Facebook search was too attenuated to taint the interviews of Witnesses X and Z. [*Id.*, pp. 22–24]  A relatively long time (9–11 months) had passed between the Facebook warrant and the interviews; there were other intervening events, including four controlled buys; and there was no evidence of intentional misconduct by

law enforcement. [*Id.*, pp. 23–24]  Since all these facts pointed in favor of attenuation—especially the third fact—Judge Ingram recommended that the interviews were too attenuated to be suppressed, even if they were tainted from the Facebook search. [*Id.*]

## III.    Exceptions to Recommended Disposition and Response

On July 23, 2020, Defendant filed timely Exceptions to the Recommended Disposition [R. 176].  On August 3, 2020, the United States filed a Response in Opposition to Defendant's Objections and Exceptions [R. 183].  Defendant excepts to five of Judge Ingram's recommendations.  First, Defendant excepts to the claimed recommendation that the Facebook affidavit provided facts enough to show probable cause that a crime had been committed on the Facebook account to be searched. [*Id.*, p. 6]  This objection is moot because the Recommended Disposition found the Facebook affidavit lacked probable cause. [R. 172, pp. 8–10]  The United States did not respond to this exception—since it is moot—or to the recommendation that the Facebook warrant lacked probable cause. [R. 183]

Second, Defendant excepts to Judge Ingram's recommendation that the good-faith exception applied to the Facebook warrant. [R. 176, p. 8]  Defendant cites to several cases: *United States v. Laughton,* 409 F.3d 744 (6th Cir. 2005); *United States v. Rice*, 704 F. Supp. 2d 667 (E.D. Ky. 2010); and *United States v. Kemper*, 375 F. Supp. 2d 551 (E.D. Ky. 2005), for the proposition that an affidavit with no described nexus to the searched object cannot fall under the good-faith exception, since it is bare-bones. [R. 176, pp. 8–9]  The United States briefly responded on this point, relying on Judge Ingram's analysis to maintain that there was no evidence of police misconduct and that the affidavit was not bare-bones. [R. 183, pp. 5–6]

Third, Defendant excepted to the alternative recommendation that the warrant for the Lannan residence established probable cause independent of the information from the Facebook

search. [R. 176, pp. 10–11]  Defendant alleges that outside of the Facebook information, there were only vague references to surveillance and statements from informants, which were conclusory. [*Id.*]  Under the standards set in *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004) (en banc); *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006); and *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009), Defendant argues that these vague averments are not sufficient to establish probable cause, even with the information about the controlled buy. [R. 176, pp. 10–12]  Again, the United States briefly responded, relying on Judge Ingram's analysis to maintain that the affidavit established probable cause. [R. 183, pp. 6–7]

Fourth, Defendant excepted to the alternative recommendation that the search of the Lannan residence would fall under the good-faith exception. [R. 176, p. 12]  Assuming that the Facebook warrant was bare-bones, the warrant for the Lannan residence would also be bare-bones, for similar reasons. [*Id.*, p. 13]  The United States did not respond to this point.

Fifth, Defendant excepts to Judge Ingram's recommendation that the witness interviews were too attenuated from the Facebook search to be suppressed. [*Id.*, p. 14]  Defendant conceded that 8–9 months passed between the Facebook search and the witness interviews but maintained that, under *United States v. Baldwin*, 114 F. App'x 675 (6th Cir. 2004), the temporal factor depended on the intervening circumstances factor. [R. 176, pp. 14–15]  On the intervening circumstances factor, Defendant argues that none of the facts taken to be intervening are particularly strong: the search of the Lannan residence was illegal, and the controlled buys did not appear to be relied upon to question the witnesses. [*Id.*, p. 15]  Accordingly, the intervening circumstances factor and the dependent temporal factor weigh in favor of suppression. [*Id.*, p. 16]  Again, the United States briefly responded, relying on Judge Ingram's analysis to maintain there were several intervening circumstances. [R. 183, p. 7]  Finally, Defendant argues that the

intentional misconduct factor—the most important factor—also weighs in favor of suppression, since searching based on a warrant that (as he earlier argues) did not meet the good-faith standard is tantamount to misconduct. [*Id.*, pp. 7–8]  The government did not respond to this point.  Accordingly, Defendant argues that the attenuation doctrine does not apply to the witness interviews, since all factors point against application. [*Id.*]  Therefore, suppression of the interviews is appropriate. [*Id.*]

## IV.   Discussion

The Court conducts a *de novo* review of the portions of a magistrate judge's recommended disposition to which a party objects. 28 U.S.C. § 636(b)(1).  The Court is not required to review claims to which neither party objects. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Defendant's exceptions to the Recommended Disposition fall under three areas: (1) the Marroquin Facebook account search—arguing that there was no probable cause to show a crime had been committed (though this exception is moot), and that the good-faith exception did not apply, (2) the Lannan residence search—arguing that there was no probable cause independent of the Facebook search, and that the good-faith exception did not apply, and (3) the witness interviews—arguing that the interviews were not attenuated enough to be admissible.  Those areas will be discussed in turn.  Because the Court agrees with the Recommended Disposition in each area of exceptions, the Recommended Disposition will be adopted.

### a.   Marroquin Facebook Account Search

First, Defendant objects to the recommendation that the affidavit provided facts enough to show probable cause that a crime had been committed on the Facebook account. [R. 176, p. 6] But Defendant is obviously mistaken on this objection because Judge Ingram actually found that

the Facebook warrant lacked probable cause, and the Court agrees.  Judge Ingram correctly identified the legal standard for evaluating the legality of a search pursuant to a warrant: whether that warrant contains "adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).  This is done by looking only within the four corners of the affidavit accompanying the warrant application. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016).  The Court must give great deference to the issuing magistrate's determination of probable cause. *Abernathy*, 843 F.3d at 250.

Still, a warrant affidavit must show a "nexus between the place to be searched and the evidence sought." *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (quoting *Carpenter*, 360 F.3d at 594).  That is, "the circumstances must indicate why evidence of an illegal activity will be found in a 'particular place.'" *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The nexus requirement applies to searches of social media accounts. *United States v. Lowry*, No. 16-4139, 2017 U.S. App. LEXIS 21346, *4–5 (6th Cir. Oct. 24, 2017).

The Court agrees with Judge Ingram's recommendation—to which the United States did not object—that the warrant affidavit lacked probable cause for the nexus of the search.  As Judge Ingram stated, "there are no *specific* averments regarding the *particular* Facebook account at issue." [R. 172, p. 9]  Here, Defendant rightly points out that there is much to be desired in the information provided to tie Marroquin's Facebook account to drug-dealing activity.  The affiant left out several key facts: he did not describe who the informant was or why she was reliable— nor did he even attest that she was reliable. [R. 77-2, p. 1]  Further, though Detective Greene notes that Marroquin's use of Facebook Messenger in drug deals was "discovered," he does not

- 11 -

specify by whom or how. [*Id.*]  What's more, the affidavit gives precious few details about the controlled buy itself: we do not know at what time of day it was conducted, who approached whom, how many messages were exchanged, what those messages described, how the informant obtained the crystal meth, or even whether the suspected crystal meth obtained in the search was ever confirmed to be methamphetamine. [*Id.*]  On those facts—standard in most search warrants describing controlled buys, *see Commonwealth v. Desper*, 643 N.E.2d 1008, 1011–12 (Mass. 1994)—we are simply left to guess.

Given the sparse details in the affidavit—and noting no objections by the United States—the Court will adopt Judge Ingram's recommendation that the warrant for the Facebook search lacked probable cause.  Even so, consistent with the Recommended Disposition, the good-faith exception saves the Facebook search evidence from suppression.

Defendant's second objection regarding the Facebook search warrant gets to the crux of this case: whether the good-faith exception should apply to the warrant and render the evidence admissible.  For the reasons below, the Court agrees with Judge Ingram's recommendation finding the good-faith exception applicable.

If a warrant lacks probable cause, but the issuing magistrate approved the warrant anyway, the resulting evidence is nevertheless admissible if the officer conducting the search relied in good faith on the warrant approval—that is, if the warrant fit the "good-faith exception." *Higgins*, 557 F.3d at 391.  The Court asks "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)).  So long as the officer did not operate in deliberate, reckless, or grossly negligent disregard of a defendant's Fourth Amendment rights when applying for the warrant, the good-faith exception will apply unless the

affidavit was "bare-bones"—that is, if the affidavit "is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).

In *White*, the Sixth Circuit explained the difference between a bare-bones affidavit and a good-faith affidavit:

> [A] bare-bones affidavit is a conclusory affidavit, one that asserts "only the affiant's belief that probable cause existed." It provides nothing more than a mere "guess that contraband or evidence of a crime would be found," either "completely devoid" of facts to support the affiant's judgment that probable cause exists, or "so vague as to be conclusory or meaningless."
>
> In contrast, an affidavit is not bare bones if, although falling short of the probable-cause standard, it contains "a minimally sufficient nexus between the illegal activity and the place to be searched." If the reviewing court is "able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been"—"some modicum of evidence, however slight"—"between the criminal activity at issue and the place to be searched," then the affidavit is not bare bones and official reliance on it is reasonable.

*Id.* at 496–97 (citations omitted).  *White* also noted that officers can show "indicia of probable cause" by "showing their work," rather than just relying on suspicion. *Id.* at 499; *see also United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013).

Two Sixth Circuit cases finding the "bare-bones" exception applicable are instructive. First, in *McPhearson*, the affidavit for a residence search established that the homeowner had drugs, but did not establish that he was dealing them, or that he would have drugs in his home. 469 F.3d at 526.  The court there found that such an absence of nexus rendered the affidavit bare-bones. *Id.* ("The only connection in the affidavit between 228 Shelby Street and drug trafficking was that Jackson police arrested McPhearson at his residence and found crack cocaine in his pocket in a search incident to the arrest.")  And second, in *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016), the affidavit for a residence search did not establish that the owner of the home

- 13 -

to be searched was actually a drug dealer, and the affidavit was "devoid of facts connecting the residence to the alleged drug dealing activity." *Id.* at 384–86.  The court found the affidavit bare-bones, noting that a passing reference to the defendant's car could not establish a minimal nexus. *Id.* at 385–86 ("Although the good-faith standard is less demanding than the standard for probable cause, the affidavit still must draw some plausible connection to the residence.") Therefore, when an affidavit shows absolutely no nexus at all between the evidence presented and the object to be searched, it will qualify as bare-bones, but if there is at least some "minimally sufficient nexus," the good-faith exception will stand. *White*, 874 F.3d at 496–97; *see also United States v. Ardd*, 911 F.3d 348, 352 (6th Cir. 2018).

Here, as described above, many of the facts alleged in the affidavit are not presented with specificity or precision, and Detective Greene consistently failed to "show [his] work."  But other facts allege at least "some modicum of evidence, however slight" that there would be evidence of drug dealing on the Marroquin Facebook account.  First, there is evidence from the controlled buy that Marroquin was dealing drugs. [R. 77-2, p. 1]  Though Detective Greene does not attest to the reliability of the informant conducting this controlled buy, corroborating information—like being involved in a controlled buy—can provide indicia of reliability.  *United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012).  Second, though there is little evidence about specifics, there is evidence that Marroquin used his Facebook Messenger account to set up the purchase. [R. 77-2, p. 1]  That gives another indication of probable cause that evidence of drug transactions will be found on the Marroquin Facebook account.  And third, an ongoing investigation tied Marroquin to Lannan, and through that it is "believed" they are using Facebook Messenger. [*Id.*]

- 14 -

Those facts in the affidavit, even if they do not amount to probable cause, do reach "some modicum of evidence, however slight" that contains "a minimally sufficient nexus between the illegal activity and the place to be searched." *White*, 874 F.3d at 496–97.  Through mentioning Marroquin's use of Facebook Messenger, the controlled buy, and the ongoing investigation, the affidavit contains at least slight evidence to suspect that a search will find evidence of drug dealing on the Marroquin Facebook account.  This affidavit can be distinguished from *McPhearson* and *Brown* in that here, evidence of nexus—the Facebook account being used to deal crystal meth—was present, whereas in *McPhearson* and *Brown* that evidence was wholly absent.  *See McPhearson*, 469 F.3d at 526; *Brown*, 828 F.3d at 385–86.

None of the cases Defendant relies on suggest that the evidence presented in the affidavit here would qualify it as a "bare-bones" affidavit.  *Laughton*, like *McPhearson* and *Brown*, stands for the proposition that an affidavit devoid of any facts explaining the nexus is bare-bones.  *Laughton*, 409 F.3d at 747 ("The warrant in this case failed to make any connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit.")  That is not the case here, as the affidavit connects the Facebook account to the controlled buy, albeit in vague terms.  *Rice* and *Kemper* are similar, in that they speak to situations where the affidavit in question simply did not draw any nexus between the information given and the object to be searched.  *See Rice*, 704 F. Supp. 2d at 668–69 ("[N]either the warrant nor the affidavit stated that the premises to be searched were the defendant's residence . . . ."); *Kemper*, 375 F. Supp. 2d  at 553 ("[T]here are no allegations or facts contained in the affidavit as to any nexus . . . .").

In sum, the Sixth Circuit cuts a high standard for bare-bones affidavits.  An affidavit may only qualify as bare-bones if it contains no nexus between evidence presented and the object to

be searched: a "minimally sufficient nexus" will do.  This case does not meet that standard, and Defendant has not shown any case law to suggest the contrary.  Accordingly, the Court will adopt Judge Ingram's recommendation that evidence from the Marroquin Facebook search meets the good-faith exception, and so suppression would be inappropriate.

### b.  Lannan Residence Search

Defendant next objects to the search of the Lannan residence, contending that if references to the Facebook search—which Defendant alleged should be suppressed—were removed, the remaining affidavit lacked probable cause and could not fit under the good-faith exception.

As an initial matter, these objections are mooted by the Court's finding in the last section that the evidence from the Maroquin Facebook search should not be suppressed.  When evidence is admissible under the good-faith exception, the "fruits" of that search are not subject to suppression and may be used as the basis for subsequent warrant applications. *See United States v. Powell*, 943 F. Supp. 2d 759, 784 (E.D. Mich. 2013), *aff'd*, 847 F.3d 760 (6th Cir. 2017). Defendant does not argue that evidence from the Lannan residence search should be suppressed even if the information from the Facebook search is included.  Because the information from the Facebook search is admissible and properly included in the warrant, the Court will adopt Judge Ingram's recommendation that the evidence from the Lannan residence search should not be suppressed.

Still, the Court agrees with Judge Ingram that, even if the fruits from the Facebook search are suppressed, the search of the Lannan residence is still admissible.  The warrant affidavit for Lannan's residence contained adequate independent facts to establish probable cause, even without the information from the Facebook search.  The affidavit still describes a controlled buy

conducted by the officer, with surveillance, at the residence to be searched, as well as unspecified surveillance, "qualified confidential informant statements," and training and experience. [R. 95-1, p. 4]  Focusing simply on the controlled buy, it is clear that conducting a controlled buy at a house is sufficient to show probable cause to search that house, so long as the buy is described in detail and the evidence is not stale. *See Archibald*, 685 F.3d at 558 (collecting cases).  As Judge Ingram reasoned,

> The controlled drug buy alone provided reasonable grounds to believe that evidence of drug trafficking would be found at the residence.  The purchase was orchestrated and surveilled by detectives.  Money was given in return for drugs. The purchase occurred at the residence itself.  Thus, there is no real question of a lack of nexus between the trafficking and the target location.

[R. 172, p. 16]  Moreover, other facts in the affidavit—the statements, surveillance, and training—add extra weight to the probable cause determination.

It is true that parts of the affidavit suffer from many of the same defects as the Facebook search affidavit described above.  We do not know key questions such as how long the controlled buy lasted, who approached whom, what kind of surveillance was used, who the informant was and whether she was reliable, and whether the suspected crystal meth was ever confirmed to be crystal meth.  That vagueness could distinguish this affidavit from the one in *Archibald*, where the affidavit specified facts such as how the drug amounts were confirmed, what methods of surveillance were used, and how the informant was known to be reliable. *Id.* at 555.  But even if the controlled buy does not amount to probable cause given its lack of detail, the residence search would nevertheless be admissible under the good-faith exception.  The affidavit to search the residence was not "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant," and there is no allegation of police misconduct in applying for the warrant. *White*, 874 F.3d at 496–97.  Even without the Facebook search information, there is more than enough information to form a "minimally sufficient nexus" between the evidence presented and

- 17 -

the Lannan residence: the controlled buy, unspecified surveillance, and confidential informant statements. [R. 95-1, p. 4]  This information provides much more than a "modicum of evidence, however slight" required to get over the bare-bones standard, and it can be easily distinguished from *Laughton*, *McPhearson*, and *Brown*, which did not provide any evidence to establish a nexus. *See White*, 874 F.3d at 497.

Defendant contends that the affidavit—if the Facebook information were suppressed—contains information "less than that offered in other cases that the Sixth Circuit has held insufficient." [R. 176, p. 11]  The Court disagrees.  Marroquin's arguments concerning the affidavit give scant mention of the fact that a controlled, surveilled drug purchase was conducted at the residence itself. [R. 172, p. 17]  In *Carpenter*, cited by Defendant, the affidavit was based merely on helicopter surveillance of marijuana farms close to the residence to be searched; no controlled buy was mentioned. 360 F.3d at 593.  In *McPhearson*, covered earlier, not only was there no controlled buy, but the court found there was simply no nexus at all between the residence to be searched and the evidence presented. 469 F.3d at 521, 526.  And finally, the affidavit in *Higgins* was based on an informant's averment that drugs were taken to the residence to be searched, rather than a controlled buy. 557 F.3d at 385.  In sum, none of the cases Defendant presents demonstrate that the affidavit for the Lannan residence search failed the probable cause standard—let alone the good-faith exception.

Defendant also relies on *United States v. McClain*, 444 F.3d 556 (6th Cir. 2005) and its resulting line of cases, which state that the good-faith exception should seldom apply when an initial search was unlawful, and then information from that initial search was used to obtain a search warrant. *Id.* at 565–66.  Defendant argues that, given the *McClain* rule, the good-faith exception should not apply to the Lannan residence search because the Facebook search lacked

probable cause.  But *McClain* simply does not apply to this case.  *McClain*, of course, confronts a situation where the warrant relies on illegally obtained evidence.  Here, however, the Court has excised the information from the Marroquin Facebook search and has analyzed the residence affidavit based on only the controlled buy at the residence, other surveillance, informant statements, and training and experience.  There is no allegation that those sources of information were obtained illegally.  Accordingly, the Lannan residence search fits into the good-faith exception.

In sum, the Court will adopt Judge Ingram's recommendations that even if the Facebook search information is excised, the residence affidavit establishes probable cause to search the residence, and that even in the absence of probable cause, the residence warrant passes muster under the good-faith exception.

### c.  Witnesses X and Z

Defendant last objects to Judge Ingram's recommendation that the witness interviews were too attenuated from the Facebook search warrant to merit suppression.

As in the previous subsection, this objection is mooted by the Court's finding that the good-faith exception applies to the Facebook search.  Since the Facebook search is admissible under the good-faith exception, *Powell* counsels that it may be used to develop further evidence. 943 F. Supp. 2d at 784.  The following analysis is offered in the alternative.

Assuming that the Facebook evidence should be suppressed, the Court agrees with Judge Ingram that the information about Marroquin from Witnesses X and Z should not be suppressed because it its too attenuated from any illegal search of Marroquin's Facebook account.

Under the "fruit of the poisonous tree" doctrine, "evidence unlawfully obtained, including all derivative evidence flowing from it, should be suppressed." *McClain*, 444 F.3d at

- 19 -

564 (citation omitted).  Suppression of that evidence is inappropriate only if: "(1) the government learns of the evidence from an 'independent source'; (2) the connection with the unlawful search becomes 'so attenuated as to dissipate the taint'; or (3) the evidence 'would inevitably have been discovered.'" *Id.* (internal citations omitted).  The burden is on the government to show that suppression is inappropriate through one of the above means. *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996).  In carrying its burden, the government must use "*demonstrated historical facts* capable of ready verification or impeachment." *United States v. Lazar*, 604 F.3d 230, 240 (6th Cir. 2010).

The United States has not alleged that the information about Marroquin would have been inevitably discovered.  The United States does maintain that the information about Marroquin was discovered through an independent source, and that it was too attenuated from the Facebook search to be suppressed. [R. 183, p. 7]  Taking first the government's contention that an independent source led to the information about Marroquin discussed in the interviews, the government has not met its burden.  True, the government has maintained that its information about Marroquin came from other sources, [*Id.*], and Agent Dalrymple averred that he learned about Marroquin from sources other than the Facebook warrant. [Evidentiary hearing, 01:27:02–01:28:26]  But neither Agent Dalrymple nor any other government official could specify exactly how he came to know about Marroquin and how Marroquin's name came up in the interviews.  This falls short of the requirement in *Lazar*, since general averments are not "demonstrated historical facts" that can be examined and critiqued.  Accordingly, the independent-source doctrine cannot apply to the witness interviews, and the Court will adopt Judge Ingram's recommendation that the government has not met its burden to show that the information about Marroquin came from an independent source.

Nothing contained in the United States' Response to Objections [R. 183] casts any doubt on this conclusion.  Though the United States asserts that Witnesses X and Z "are in no way derivative of the search of the Defendant's Facebook account," [*Id.*, p. 7], the Response does not contain any facts to back up this assertion.  Given that the government must show specific facts to meet its burden, the Response does not bring the United States any closer toward meeting it.

Still, the government can show that the witness-interview information about Marroquin should not be suppressed—even if the Facebook search should be suppressed—through the attenuation doctrine.  Whether a piece of information is "so attenuated as to dissipate the taint" depends on three factors: temporal proximity of the new information to the taint, intervening circumstances, and the "purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975); *United States v. Mills*, 372 F. Supp. 3d 517, 537 (E.D. Mich. 2019).  Not all three factors are equally weighted: whether something is temporally proximate depends on whether there were intervening circumstances, and the presence or absence of misconduct is the most important factor. *United States v. Shaw*, 464 F.3d 615, 627–28, 630 (6th Cir. 2006).

Here, all three factors weigh in favor of attenuation and against suppression.  First, Defendant concedes that 8–9 months passed between the Facebook search and the witness interviews. [R. 176, p. 14]  Though *Shaw* instructs that temporal proximity must be considered in the context of intervening circumstances, time frames of even one month have pointed in favor of attenuation. *United States v. Akridge*, 346 F.3d 618, 627–28 (6th Cir. 2003).  There were a number of intervening events: the Facebook search of co-conspirators and four controlled buys involving Defendants Marroquin and Lannan. [Evidentiary Hearing at 00:13:44–00:19:33, 00:49:08–00:50:09]  Defendant rightly points out that the government never proved any of these events actually provided the information used to ask Witnesses X and Z about Marroquin, which

lessens their evidentiary value. [R. 176, p. 15]  But this argument attempts to hold the

intervening-circumstances factor to the same standard as the independent-source test, and

intervening circumstances have been found even when there is no clear line of proof between the

two events. *See United States v. Wells*, 690 F. App'x 338, 345–46 (6th Cir. 2017).  The

intervening-circumstances factor weighs in favor of attenuation.  Finally, on the misconduct

factor, even if the affidavit for the Facebook search is found to be bare-bones, Defendant does

not allege that the police were intentionally searching pursuant to an unconstitutional warrant.

[R. 176, p. 16]   At most, police unreasonably presented the magistrate with a warrant that was

too vague—which the magistrate then accepted. [*Id.*, p. 9]  As to the flagrancy of the conduct,

Judge Ingram correctly found no facts that support a finding of purposeful or flagrant conduct.

Accordingly, the third factor weighs in favor of attenuation. With all three factors weighing in

favor of attenuation, the Court finds that the interviews of Witnesses X and Z were "so

attenuated" from the Facebook search that they should not be suppressed—even if the Facebook

search should be suppressed.  The Court will adopt Judge Ingram's recommendation.

## V.    Conclusion

This Order Adopting the Recommended Disposition has conducted a *de novo* review of

all parts of the Recommended Disposition that were objected to.  The Court finds that the

Facebook search lacked probable cause, but suppression is not warranted under the good-faith

exception. Further, even if the Facebook search were suppressed, the search of the Lannan

residence is supported by probable cause—and would nevertheless fit within the good-faith

exception in the absence of probable cause.  Finally, information from the Witness X and Z

interviews is too attenuated from any alleged illegal search of Defendant's Facebook account to

warrant suppression.  Accordingly, for the reasons stated above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1.    The Magistrate Judge's Recommended Disposition [**R. 172**] is **ADOPTED** as the opinion of this Court;

2.    Defendant's Exceptions to the Magistrate's Recommended Disposition [**R. 176**] are **OVERRULED**; and

3.    Defendant's Motion to Suppress [**R. 77**] is **DENIED**.

This the 29th day of October, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY